(84 Misc. Rep. 561)
### E. F. KEATING CO. v. CITY OF NEW YORK et al.

(Supreme Court, Special Term, New York County.  December, 1913.)

1. MUNICIPAL CORPORATIONS (§ 366*)—PUBLIC IMPROVEMENTS—CONTRACTS—
   COMPLETION OF WORK BY CITY.
       Where a city, in accordance with the contract, notified the contractor
   to discontinue work because of delay, and that the work would be com-
   pleted at its expense, such notice operated as a termination of the employ-
   ment, rather than a cancellation of the contract, and the contractor was
   entitled to the balance of the contract price after deducting the cost of
   finishing the work.
       [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
   899; Dec. Dig. § 366.*]

2. MUNICIPAL CORPORATIONS (§ 373*) — PUBLIC IMPROVEMENTS — CONTRACTS —
   RIGHTS OF SUBCONTRACTOR.
       A subcontractor·could establish his lien upon a municipal improvement
   to the extent of the sum due the contractor; his rights being measured
   by those of the contractor.
       [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
   913; Dec. Dig. § 373.*]

3. MUNICIPAL CORPORATIONS (§ 373*)—PUBLIC IMPROVEMENTS—CONTRACTS—
   RIGHTS OF SUBCONTRACTORS—PLEADING.
       In an action against a city to foreclose a subcontractor's lien upon pub-
   lic improvements, liquidated damages for delay, not claimed in the an-
   swer, should not be allowed.
       [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §
   913; Dec. Dig. § 373.*]

Action by the E. F. Keating Company against the City of New York
and others.  Judgment for plaintiff.

Phillips & Avery, of New York City (Frank M. Avery and Henry
W. Eaton, both of New York City, of counsel), for plaintiff.

Archibald R. Watson, Corp. Counsel, of New York City (John L.
O'Brien, of New York City, of counsel), for defendants.

GIEGERICH, J.  [1, 2]  The action is brought by a subcontractor
to foreclose a lien for a public improvement.  According to the stipula-
tion of facts, the principal contractor, after doing a large part of the
work contracted for, failed to complete, and on the 18th day of June,
1907, was adjudged a bankrupt, and a trustee in bankruptcy was ap-
pointed.  On the 2d day of July, 1907, the city authorities notified
the bankrupt contractor to discontinue all work under the contract
and that the city would proceed to complete the work in the manner
provided by the terms thereof.  The ground of this action by the city
authorities stated in the notice was that the work was unnecessarily
and unreasonably delayed and that the contractor was willfully violat-
ing the conditions of the contract.  The provisions of the contract on
the points evidently referred to in the notice served on behalf of the
city are that, if the work be unnecessarily or unreasonably delayed or
the contractor willfully violates any of the conditions of the contract,
then the city authorities shall have the power to notify the contractor
to discontinue all work under his contract, and shall thereupon have

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

power to complete or to contract for the completion of the work or such part thereof as they might deem necessary and to charge the expense thereof to the contractor, and that:

"The expense so charged shall be deducted and paid by the city out of such moneys as may be due or may at any time thereafter become due to the contractor, * * * and in case such expense shall exceed the said sum * * * then the contractor shall pay the amount of such excess to the city."

The city authorities procured the work contracted for to be completed by another contractor. The original contract price was $22,300. The city had paid the original contractor $12,375 and paid to have the work completed $7,350, making a total expense of $19,725, which, deducted from the contract price, leaves $2,575. The chief question in the case is whether the city is entitled to retain this difference or whether it can be reached by the subcontractor under his lien, whose rights, of course, are measured by the rights of the principal contractor against the city. It will be observed that the contract under consideration does not expressly provide as to what shall be done with the excess after deducting the cost of completing the contract, in which respect it differs from most of the cases to which attention has been called in the briefs. In Herrmann & Grace v. Hillman, 203 N. Y. 435, 96 N. E. 741, and in Willard Co. v. City of N. Y., 81 Misc. Rep. 48, 142 N. Y. Supp. 11, by the terms of the contract the contractor was not entitled to such excess. On the other hand, in Fraenkel v. Friedmann, 199 N. Y. 351, 92 N. E. 666, and Steiger v. London, 141 App. Div. 382, 126 N. Y. Supp. 256, the contract expressly provided that the contractor should have such excess. The Court of Appeals in Fraenkel v. Friedmann, supra, points out the distinction between the owner's terminating and canceling a contract and terminating the contractor's employment under the contract. In this case it seems plain, from the notice served by the city upon the principal contractor, that there was not a cancellation of the contract, but a termination of the contractor's employment. The contractor was notified "to discontinue all work and that the city would proceed to complete the work called for under the contract." In Van Clief v. Van Vechten, 130 N. Y. 571, 29 N. E. 1017, this same question arose under a contract which, like the present one, made no express provision as to whether the contractor should or should not be entitled to any excess after deducting the cost of completion from the balance of the contract price. In that case, although it appeared that the contractor wholly abandoned the work willfully, the court held that, while the owner was under no obligation to do so, she nevertheless did go on and complete the building according to the contract, and that, as her action was according to the contract, it would be presumed, in support of the judgment, that it was under the contract, and that, although she had threatened to cancel the contract, she had not done so, and the lien of the subcontractor attached to the difference between the sum expended in completion of the contract and the amount unpaid on the contract price. The court reached that result, although they expressly recognized that there was nothing due upon the contract when the lien was filed, and rested their conclusion upon the act of the owner in proceeding to complete the building accord-

-ing to the contract, which they held thus continued operative through her action. My conclusion is that in this case the plaintiff is similar-ly entitled to such difference, amounting here, as above stated, to $2,-575. Dennison Construction Co. v. Manneschmidt, 204 N. Y. 404, 97 N. E. 859, differs from the present case in that there was no evidence that the owner proceeded or intended to proceed under the article of the building contract which gave him liberty to terminate the employ-ment of the contractors and to finish the work himself; the court point-ing out that neither had an architect's certificate been procured nor had the written notice provided in the article been given. In the pres-ent case there was such certificate and there was such notice.

[3] On behalf of the defendant it is also urged that the liquidated damages at the rate prescribed in the contract for delay amount to more than the excess above mentioned, but, as no claim for such liq-uidated damages is set up in the answer, it should not be allowed.

There should be judgment in favor of the plaintiff for the sum of $2,575. Present, with proof of service, requests for findings within five days after the publication of this memorandum.